**MAURITZ et al. v. BELL.**

No. 9948.

Court of Civil Appeals of Texas. Galveston. Feb. 13, 1934.

Appellants' Rehearing Granted Dec. 20, 1934.
Appellee's Rehearing Granted Feb. 28, 1935.
Rehearing Denied April 18, 1935.

Rose & Sample, of Edna, for appellants.

J. W. Ragsdale and Edw. C. Thomas, both of Victoria, for appellee.

GRAVES, Justice.

This general statement, deemed to be correct, has been taken from the appellee's brief:

"Eli Bell, appellee, brought this suit of trespass to try title in the district court of Jackson County, Texas, to recover certain land in that county. Appellee alleged, in substance, that on February 2, A. D. 1928, one J. M. Yoas, as agent for appellee, purchased the land in question for appellee and paid for it with appellee's money, but took the conveyance in his (Yoas') name. This, appellee said, made him the beneficial owner of the land, and Yoas a mere trustee. Sub-

sequently, on December 10, A. D. 1929, Yoas conveyed the property to appellee for the recited consideration of $10.00 and a vendor's lien note for $1250.00, secured by a deed of trust payable to the Guaranty Bond State Bank of Ganado, Texas. At the time of the conveyance of the land to Yoas (February 2, 1928), appellee, a married man, was occupying the property as a tenant, and thereafter he continued to occupy the property as his home. The Guaranty Bond State Bank knew all these facts; hence, it was appellee's contention that the second transaction (i. e., the conveyance from Yoas to Bell, and the vendor's lien note given to the bank by Bell on December 10, 1929) was a subterfuge to create a lien on Bell's homestead.

"After this the note was renewed, and on or about the 26th day of January, A. D. 1932, the Guaranty Bond State Bank closed its doors; and the Citizens State Bank of Ganado, Texas, on March 11, A. D. 1932, acquired its assets, among them appellee's $1250.00 vendor's lien note, then past due.

"On May 3, A. D. 1932, the Citizens State Bank caused the land to be sold under the deed of trust, at which sale appellants became the purchaser.

"The trial court submitted the case to the jury on special issues, which were in substance: (1) whether Yoas purchased the land for appellee as his agent with appellee's money, to which the jury answered, 'Yes'; (2) if the Guaranty Bond State Bank or its officers had actual knowledge that Yoas—acting as agent for appellee—had purchased the land for appellee and that appellee was occupying the land as a homestead, to which the jury found also in the affirmative; and (3) if the $1250.00 note of appellee was given for any part of the purchase price of the land, to which the jury answered, 'No.'

"On this verdict, the trial court rendered judgment in favor of appellee for the title and possession of the land in question."

After a careful examination of the statement of facts, it is clear to this court that the evidence was sufficient to support each and all of the jury's findings thus made; wherefore, the beneficial ownership of the land sued for became vested in the appellee as principal, the status of Yoas as his agent being that of a mere trustee; the law on this subject is summarized in 26 Ruling Case Law, page 1231, paragraph 77, in this brief statement: "In the first instance, where no question arising out of the relationship of the parties is involved, and the trust sought

to be established is in land paid for by one person with conveyance to another, it is necessary to show only that the cestui que trust furnished the purchase money for land in controversy, and that the deed was taken in the name of another, the trustee."

A similar statement of it is also made by our Supreme Court in the early case of Neill v. Keese, 5 Tex. 23, 51 Am. Dec. 746, in this language: "The clear result of all the cases, without a single exception (says Story), is, that the trust of the legal estate, whether freehold, copyhold or leasehold; whether taken in the name of the purchaser and others jointly, or in the name of others without the purchaser; whether in one name or several; whether jointly, or successively, results to the man who advanced the purchase money. This is the general proposition supported by all the cases."

To the same effect are these further authorities: Eastham v. Roundtree, 56 Tex. 110; Burns v. Ross, 71 Tex. 516, 9 S. W. 468; Hix et al. v. Armstrong, 101 Tex. 271, 106 S. W. 317; 28 Cyc., paragraph B, page 104; 2 Story Equity, §.1201, note 2a.

■ Furthermore, as was done in this instance, it was plainly competent to show such a trust as thus resulted in favor of the appellee by parol evidence, notwithstanding the fact that the deed evidencing the original purchase ran directly to the contrary, in that it was made from Egg to Yoas in consideration of $400 cash in hand recited to have been paid by the latter to the former, as if they were the sole parties to the transaction, without mention of the appellee. Neill v. Keese, supra; Mead v. Randolph, 8 Tex. 191; Miller v. Thatcher, 9 Tex. 482, 60 Am. Dec. 172; McClenny v. Floyd's Adm'r, 10 Tex. 159; James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743; Brotherton v. Weathersby, 73 Tex. 471, 11 S. W. 505; Bailey v. Harris, 19 Tex. 108, 109; Cuney v. Dupree, 21 Tex. 211; Dunham v. Chatham, 21 Tex. 231, 73 Am. Dec. 228; Johnson v. Deloney, 35 Tex. 42; Strickland v. Baugh (Tex. Civ. App.) 169 S. W. 181; Addison v. Ball (Tex. Civ. App.) 262 S. W. 877; McWhorter v. Oliver (Tex. Civ. App.) 2 S.W.(2d) 281; Townsend v. Chaillett (Tex. Civ. App.) 45 S.W.(2d) 354; R. C. L. par. 75, page 1230; 39 Cyc. page 155.

■ Likewise, it was just as permissible to prove by parol—as was conclusively done here—that the apparent sale of the property from Yoas and wife to the appellee, as in terms reflected on the face of their subsequent deed therefor to him of December 10 of 1929, reciting as its consideration the retention of a $1,250 vendor's lien note against the same payable to the Guaranty Bond Bank of Ganado, together with a deed of trust thereon as further security for the note, was in fact a mere subterfuge on the part of the bank and its officers in the abortive effort to fix a lien upon what they had all along known was the occupied homestead of the appellee to secure a $1,250 loan from the bank to him accompanied by a deed of trust on the property; in support of this latter conclusion, these authorities are cited: Stamper v. Johnson, 3 Tex. 1; Mead v. Randolph, 8 Tex. 191; Wiggins v. Wiggins, 16 Tex. Civ. App. 335, 40 S. W. 643; Stafford v. Stafford, 29 Tex. Civ. App. 73, 71 S. W. 984; Silliman v. Oliver (Tex. Civ. App.) 233 S. W. 867; Sammons v. Brunson (Tex. Civ. App.) 25 S. W.(2d) 685; Sammann v. Deitrich (Tex. Civ. App.) 39 S.W.(2d) 647.

As our introductory statement has shown, the $1,250 note for which the deed of trust so foreclosed against the land stood as security was past-due at the time the Citizens State Bank—appellants' predecessors in claim under them both—acquired the same, along with the other assets of the closed Guaranty Bank; appellants and their grantor were therefore in no better position than the prior bank and its officers, hence the homestead defense was equally available to the appellee as against them, there being, under the evidence and findings, no secret equities between the original parties they were not at least charged with knowledge of. 6 Texas Jurisprudence, p. 705, par. 92, and cited cases.

■ The complained of statements in his closing address to the jury of appellee's counsel to the effect (1) that he knew Bell had testified that he had sold his 1927 rice crop for over $7,000 net and believed that Yoas had also done so, (2) that the appellants were in possession of the records of the Guaranty Bond State Bank, which would show the transfer of appellee Bell's account to J. M. Yoas of the proceeds of the sale of such rice crop, are not thought to involve prejudicial error.

The first of these statements merely evidences what, for all else there appears, was a legitimate inference of counsel from the facts in evidence made in good faith, hence was permissible. Corn v. Crosby County Cattle Co. (Tex. Com. App.) 25 S.W.(2d) 290; Fidelity Union Fire Ins. Co. v. McDonald (Tex. Civ. App.) 249 S. W. 538; Zeiger v. Woodson (Tex. Civ. App.) 202 S. W. 163; International & G. N. R. Co. v. Davison (Tex.

Civ. App.) 138 S. W. 1162; Moore v. Rogers, 84 Tex. 1, 19 S. W. 283; Hart Mfg. Co. v. Mann's Boudoir Car Co., 65 Mich. 564, 32 N. W. 820; Ruling Case Law, vol. 2, par. 18, page 420; Corpus Juris, vol. 65, par. 285, page 267.

Not different in legal effect also was the second statement. From all the facts and circumstances in evidence it was plainly a legitimate argument in support of a reasonable inference to the effect that the books and records of the bank, down under which the appellants had acquired their claim, would show whether or not the transfer counsel referred to appeared; especially since Yoas himself had testified that this was done, it further appearing that the Citizens Bank had acquired everything the prior bank had, many of the records of which appellants introduced in evidence, and one of them having been president of the Citizens Bank at the time the conditions the criticized remark applied to existed; wherefore, there being some evidence from which such an inference was not unreasonable, the argument cannot be said to have been improper. Corpus Juris, vol. 64, par. 284, page 265; Ruling Case Law, vol. 2, par. 13, page 414; Kilpatrick v. Grand Trunk Ry. Co., 74 Vt. 288, 52 A. 531, 93 Am. St. Rep. 887; Morrill v. Palmer, 68 Vt. 1, 33 A. 829, 33 L. R. A. 411; Louisville & N. R. Co. v. Perkins, 165 Ala. 471, 51 So. 870, 21 Ann. Cas. 1073; Sutor v. Wood, 76 Tex. 403, 13 S. W. 321; Russell Coleman Oil Mill v. San Antonio, U. & G. R. Co. (Tex. Civ. App.) 37 S.W.(2d) 165; Corn v. Crosby County Cattle Co. (Tex. Com. App.) 25 S.W.(2d) 290; Merchants' Life Ins. Co. v. Griswold (Tex. Civ. App.) 212 S. W. 807; Rust v. Page (Tex. Civ. App.) 52 S.W.(2d) 937.

What has been said disposes of all appellants' contentions going to the merits of the appeal adversely to them; an affirmance of the judgment has accordingly been entered.

Affirmed.

### On Motion for Rehearing.

After mature consideration of appellants' forceful motion for rehearing, in which is cited the recent holding of the Commission of Appeals in Little v. Shields, 63 S.W.(2d) 363, that was not extant when our original opinion herein was rendered, we have concluded that our former holding to the effect that the Citizens State Bank was in no better position than the prior bank, hence the homestead defense was just as available against it, perhaps went too far, under the Shields Case, and that such question was rather one of fact; the appellants so contended in the trial court, raising it as such by both pleading and testimony, and requested its submission to the jury under this inquiry:

"Special Issue No. 3: At the time Citizens State Bank of Ganado, Texas, took title to the $1250 renewal note and liens securing its payment, did its President, Mr. T. N. Mauritz, know that J. M. Yoas, acting as the agent of and for plaintiff, had purchased the land in question from A. A. Egg, for plaintiff, and had paid for said land with money of plaintiff?"

The motion for rehearing will therefore be granted and the cause will be remanded for another trial, for the refusal of the court to submit the quoted issue.

Rehearing granted, judgment reversed, cause remanded.

### On Appellee's Motion for Rehearing.

With something of reluctance—as that opinion discloses—this court on appellants' motion for rehearing so applied the holding in Little v. Shields (Tex. Com. App.) 63 S.W. (2d) 363, as to conclude that appellants had been entitled upon the trial hereof to a finding upon whether or not they had actual knowledge when they bought the $1,250 Bell note that Yoas had originally purchased the land in question for and with the money of Bell; on a more careful re-examination of the Shields Case, however, it is now concluded that, upon the materially differing facts here obtaining, it does not support the conclusion so before reached, but that, instead, the more recent holding of the Beaumont Court of Civil Appeals in Smith v. New Waverly State Bank, 76 S.W.(2d) 201, 204, which in effect was upheld by the Supreme Court in its dismissal thereof for lack of jurisdiction on February 6th of 1935, is directly in point here on the legal equivalent of the same state of facts, and should therefore be followed; indeed, the case at bar is a stronger one on the facts for the application of the principles of law declared in the Smith Case than it is; the Beaumont court on rehearing in the Smith Case thus in brief differentiates it, and perforce the cause here at bar also, from the Shields Case in this statement:

"The fact that appellants did nothing to induce appellee to purchase the Dr. Spiller notes clearly distinguishes this case from Little v. Shields (Tex. Com. App.) 63 S.W.(2d) 363, and Bernstein v. Hibbs (Tex. Civ. App.) 284 S. W. 234, with which appellee, in its motion for rehearing, insists we are in con-

flict. Had appellants induced appellee to purchase the Dr. Spiller notes on a representation that the notes were valid, then appellee could have invoked against appellants the principle of equitable estoppel, recognized and enforced in the cases cited supra. The principle of equitable estoppel was recognized by this court in Judge v. Shaboub, 57 S.W.(2d) 613, 616, where we said: 'We think these facts support the conclusion of the trial court that appellants were estopped to assert their claim of homestead against the deed of trust lien. In Burnett v. Atteberry, 105 Tex. 119, 145 S. W. 582, 587, our Supreme Court quoted with approval the rule that "he who has been silent as to his alleged rights when he ought in good faith to have spoken, shall not be heard * * * when he ought to be silent." In Garrett v. Katz, 23 S.W. (2d) 436, 438, Judge Looney, speaking for the Dallas Court of Civil Appeals, said: 'The doctrine is also well settled that, where a void lien emerges from an illegal transaction, such as the one involved in this controversy, the maker will be estopped to set up its invalidity where he has induced a stranger to become its purchaser on representations that asserted its validity.' * * *

"As appellants did not induce appellee to purchase the notes, the case of Harrington v. H. B. Claflin & Co. [91 Tex. 294, 42 S. W. 1055], cited in our original opinion, is absolutely on all fours with the facts of this case supporting our conclusion that appellee 'was not a holder in good faith.'"

A recurrence to the facts recited in our original opinion will show, not only, as therein stated, that there were no secret equities between the original parties in this transaction that appellants were not at least charged with knowledge of, but further that this Bell note, as well as all renewals thereof, had been past due at the time appellants purchased it, and that neither Bell nor his wife had ever done another thing touching it— that is, had never had any transaction whatever concerning it with appellants, hence had never induced them to purchase it, nor done anything else toward estopping either of themselves from asserting the defense of the homestead character of the land the note was given as a lien upon; appellants here, therefore, like the New Waverly Bank in the Smith Case, were not holders of this Bell note in good faith, and that being alone the transaction and the situation as affected them, they were charged as a matter of law with notice that this Bell note had not been given for a part of the purchase money of the land described therein, but that it had been part and parcel of an unlawful transaction in which the original parties to it (that is, the Bells, Yoas, and appellants' predecessor bank) had attempted to mortgage the known homestead of the Bells for a debt for which it could not be incumbered. Harrington v. H. B. Claflin & Co., 91 Tex. 294, top page 300, 42 S. W. 1055; Little v. Shields, supra, 63 S.W. (2d) 363, page 366 (3, 4), (5), and cited authorities; Smith v. New Waverly State Bank, supra, 76 S.W.(2d) 201, pages 202 to 205, and cited authorities.

Wherefore, under the undisputed facts thus otherwise shown to have existed, appellants' special issue No. 3, for the refusal of which a reversal was heretofore ordered on their motion, was an immaterial one, hence that reversal order was erroneous, and since the Supreme Court, as noted supra, has already dismissed the New Waverly Bank's application for writ of error in the Smith Case for want of jurisdiction, it may not be properly further argued that either the holding in the Smith Case, or ours now made herein, is in conflict with the Shields Case, or any of the long line of others it so carefully reviews and distinguishes.

From these conclusions it follows that our reversal of this cause upon appellants' motion for rehearing must be set aside, and that our original judgment herein should be reinstated, with reaffirmation of the opinion thereupon rendered, and it is so ordered.

Appellee's motion for rehearing granted, preceding judgment of reversal set aside, and original judgment of affirmation reinstated.