## WALKER et al. v. KOGER et al.

### No. 1920.

Court of Civil Appeals of Texas. Eastland.
June 16, 1939.

Rehearing Denied Sept. 15, 1939.

Lockhart & Brown, of Lubbock, for appellants.

Carl Rountree, of Lamesa, for appellees.

FUNDERBURK, Justice.

Jack Cross, the owner of three lots in Lamesa, on December 1, 1919, conveyed same to Jesse Walker in part consideration of four vendor's lien notes of $500 each, the last due January 1, 1924. Walker and wife later on June 8, 1920, conveyed said lots to Mrs. S. J. Bailey, who, for part consideration, assumed said notes. One of said notes having been paid, the executors of Jack Cross on January 17, 1921, trans-

ferred the other three to John R. Bailey (J. R. Bailey), a son of Mrs. S. J. Bailey. John R. Bailey in turn, on or about January 6, 1927, transferred said three notes to C. C. Koger as collateral security for three notes—one for $1,450, another for $500 and another for $350, each signed by J. R. Bailey, Mrs. S. J. Bailey and Jesse Walker. Afterwards, on May 10, 1930, Mrs. S. J. Bailey in her individual capacity, and as qualified community survivor, conveyed said land to J. R. Bailey. On the same day (May 10, 1930) J. R. Bailey and Jesse Walker executed to C. C. Koger their note for $3,085. John R. Bailey gave security for said $3,085 note by executing a deed of trust on said land; and Jesse Walker gave further security by executing a chattel mortgage on barber shop fixtures. The $3,085 note recited that it was a renewal and extension of said three notes of $1,450, $500 and $350.

This suit was brought by C. C. Koger, individually, and as independent executor of his deceased wife's estate, joined by his son Robert Curtis Koger, sole heir of his mother, against Jesse Walker and wife, Hattie Walker, John R. Bailey and wife Mrs. John R. Bailey, Mrs. S. J. Bailey, individually and as community survivor, and one Walter Barfoot, to recover (of the makers) a balance due, with certain credits acknowledged, on said $3,085 note, and as against all defendants to foreclose the deed of trust lien.

The various special pleas of the defendants and answering pleas of the plaintiffs may be noticed in the opinion so far as deemed necessary.

In a jury trial special issues were submitted, the answer to one being, under the terms of the submission, conclusive. Such issue, as answered, was to the effect that, at the time of the execution and delivery of the deed by Mrs. S. J. Bailey to John R. Bailey, there was no agreement "between the said Mrs. S. J. Bailey and John R. Bailey [as alleged by defendants] that she was placing title to said property in John R. Bailey so that he might more conveniently dispose of various interests therein in case of her death and that such deed should not take effect until the time of her death."

Upon this verdict and all other necessary issues presumably established conclusively against the defendants, the court gave judgment for the plaintiffs, establishing the amount of indebtedness due as $6,292, awarding a foreclosure of the lien against said property; and providing for execution, only out of the sale of the property. The defendants (except Walter Barfoot, who, not having answered, nor being by the record shown to have been cited, we presume to have been dismissed) have appealed.

Appellants' first assignment of error alleges that "Reversible error was committed by the attorney for appellees (plaintiffs) in his argument to the jury, in calling by name the members of the jury he was addressing" etc. The subject matter of an assignment of error is some ruling or action of the court. It is apparent that *no ruling or action of the court* is by said assignment either identified, or alleged to have been error. As well said in Bell v. Blackwell, Tex.Com.App., 283 S.W. 765, 767: "Logically, in all cases, the error inheres in the ruling or action of the court, whatever be the subject-matter of such ruling. No appellate court would think of reversing a trial court for an improper argument of counsel or for misconduct of the jury or any other act not of the court himself, without in some way calling the matter to the attention of the trial court and procuring his ruling thereon. The complaint therefore is at last based upon the ruling of the court, whether that ruling occurs immediately upon the happening of the event or later upon the motion for new trial." The argument, it is true, was set up as a ground for new trial in the motion for new trial, but neither the above nor any other assignment of error refers to or complains of the action of the court in overruling the motion for new trial.

The second assignment of error, performing the true function of an assignment of error, does identify and complain of a ruling or action of the court, namely: "in overruling * * * the motion of appellants (defendants) to declare a mistrial and to discharge the jury" because of the action of counsel while "addressing the jury" and calling the names of two individual jurors. A majority of the court incline to the view that this assignment should be overruled, even if it would be error for the court to overrule a motion for new trial on account of such argument. We are not aware that this precise question has been determined by any court in this state, but it occurs to us that if during the trial of a case, particularly after the trial has advanced to the stage of

argument by counsel, something occurs which may require the court, when and if properly petitioned by motion for new trial to do so, to set aside the judgment, the court would not necessarily violate any duty by refusing immediately to declare a mistrial. Suppose in such a case the jury should return a verdict in favor of the party against whom the wrong is committed. Undoubtedly, the error would thereby be rendered entirely harmless. In such case, all the costs and expenses of a second trial would be avoided. On the other hand, should the verdict of the jury be such as not to eliminate any question of the prejudicial effect of the argument, full protection may be given by the court by granting a motion for new trial. Upon these considerations we cannot agree that the trial court committed reversible error in overruling the motion to discharge the jury and declare a mistrial.

Had our jurisdiction been invoked by proper assignment of error to review the action of the court below in overruling appellants' motion for new trial on the ground that the argument of counsel was improper (one of our members is of opinion that the question is raised), we are unanimously of opinion that material error would not have been shown.

Counsel for appellees in his opening argument said: "Upon the question of whether or not there was an agreement between C. C. Koger and John R. Bailey that John R. Bailey was to secure a deed from his mother for the purpose of giving C. C. Koger a deed of trust on her homestead, the issue as between C. C. Koger and John R. Bailey is clear cut and it is up to you Mr. Tuckness and you Mr. Allen."

 Tuckness and Allen were jurors. Upon objection being made, the court instructed the jury verbally that in "arriving at a verdict they should not consider or be influenced by the fact that the plaintiffs' attorney addressed any of them personally but to consider only the evidence." Conceding that strict propriety would have required counsel to refrain from calling the names of individual jurors, the question is posed: Was his act in doing so, under the circumstances, such a violation of the rights of the defendants as to make it the duty of the court to grant defendants' motion for new trial on account of such argument? The answer to that question is believed to be dependent upon whether or not the mere act of counsel in mentioning the names of the two jurors, in the absence of any other element of questionable propriety, was clearly and certainly of such a nature as to be reasonably calculated to influence the jury to render a verdict against the defendants. Unless of such nature, the impropriety considered as an error, is to be regarded as immaterial error. Unlike material error, it would give rise to no presumption of prejudicial effect and hence would not come within the operation of the rule "that, where improper argument has been indulged in, the adverse complaining party is entitled to reversal of the judgment, as a matter of law, if under all the circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted." Texas Ind. Ins. Co. v. McCurry, Tex.Com.App., 41 S.W.2d 215, 217, 78 A.L.R. 760, and cases cited in Williams v. Rodocker, Tex.Civ.App., 84 S.W.2d 556.

Within the classification of errors "as (1) material and immaterial (2) harmful, or prejudicial, and harmless" which this court had occasion to consider and discuss at length in Williams v. Rodocker, supra, we would consider the act of counsel in calling the names of the two jurors, uncomplicated with any other impropriety in argument or other conduct, as immaterial error. We cannot say that it was clearly and certainly of such nature as to be reasonably calculated to cause the jury to render an improper verdict. Therefore, we could not say that the ruling or action of the court in overruling the motion for new trial on account of such argument would be a wrong ruling or wrong action.

 The trial court committed no error, we think, in overruling the plea in abatement urged on the ground of the non joinder of necessary parties defendant. The suit was brought upon the theory that the land was owned by J. R. Bailey, subject to the deed of trust lien in favor of plaintiffs. The land was acquired by Mrs. S. J. Bailey after the death of her husband, and hence was presumptively her separate property. She treated it as part of the community estate, but that is immaterial, since her deed conveying the land to J. R. Bailey was effective whether the land was community or separate. If separate, the conveyance in her individual capacity was effective, and if community the conveyance in her capacity of qualified community survivor was effective. In either case, the

only issue tendered as an obstacle to the transfer of the title by the deed was determined by the verdict of the jury against Mrs. S. J. Bailey and the other defendants.

■ The deed of Mrs. S. J. Bailey to J. R. Bailey was not shown to be without consideration. In the first place, it imported a consideration. Plaintiffs contended that a consideration of the deed was C. C. Koger's agreement to release Mrs. S. J. Bailey from liability on the three notes of $1,450, $500 and $350. If that contention was correct, a consideration existed and it was not shown to be incorrect. The renewal of the indebtedness by a new note signed only by J. R. Bailey and Jesse Walker and secured in part by a deed of trust on the land of the same date as the deed to J. R. Bailey was at least some evidence to support the contention.

Further, it was shown that C. C. Koger was the holder of the three cross-notes of $500, representing part of the purchase price of the land which by her express assumption Mrs. S. J. Bailey, at the time a feme sole, became liable to pay. The fact that the three notes were apparently barred by limitation at the time of the deed in question constituted no obstacle to the power of Mrs. S. J. Bailey as qualified community survivor to sell the land in discharge of the debt. Stone v. Jackson, 109 Tex. 385, 210 S.W. 953; Dawson v. Holt, 44 Tex. 174.

■ But lastly, and in any event, the burden of proof was upon the defendants to establish the invalidity, if any, of the deed, and, as said before, the only issue tendered in attack upon it, was found by the jury against defendants.

If the land was the separate property of Mrs. S. J. Bailey, as presumptively it was from the fact she acquired it after the death of her husband, then, of course, neither Mrs. Walker nor any other of the children of Mrs. S. J. Bailey, or her deceased husband, could impress it with a homestead exemption, in disparagement of the title.

The fact that Mrs. Bailey inventoried the land as community property, even if conclusive upon her, would not, we think, necessarily be conclusive as to the plaintiffs. But if it was community property, then Mrs. S. J. Bailey, as qualified community survivor, had the undoubted right to sell it, and we think as against such right a claim of heirs to homestead exemptions

therein would be without effect. The power to sell implies the power to vest title free of any such encumbrances upon the title.

It is our conclusion that no error has been shown requiring a reversal of the judgment, that said judgment should be affirmed, and it is so ordered.